Reese, J.
delivered the opinion of the court.
In the year 1826, Thomas H. Allsup died intestate, in the county of Lauderdale, in the State of Alabama, where also was his domicil. In that year, administration upon his estate •was granted by the orphans court of Lauderdale county, to three of the defendants, two of whom resided in the county of Lincoln, in this State, and the other in the county of the intestate’s domicil. In 1828, the administrators, under the provisions of a statute of Alabama, made to the orphan’s court of Lauderdate county, a declaration setting forth, that the estate upon which they had administered was insolvent, the effect of which proceeding is to prevent the institution and to suspend the prosecution of suits against the personal representative, and to entitle such creditors as may, in the prescribed time, come before the court and properly ascertain their claims to a pro-rata distribution of the assets among them.
The complainant had in the life time of the intestate, purchased from him a tract of land lying in the county of Lincoln in this State, had paid him the consideration money, and had received from him a bond for the conveyance of title to the land. In’July, 1S28, and after the proceedings above stated were had in Alabama, the complainant filed this bill against the administrators, the widow and the heirs of Thomas H. *284 Allsup, for the specific execution of the contract of sale, of if a title could not be made by the defendants, that they should be compelled to refund to him the consideration. Answers were filed by all the defendants, in which they admit the sale and the bond for title, the payment of the consideration, the imputed difficulties with regai d to the title, and state their inability to make a conveyance prior to the determination of certain suits, in which the validity of their title was involved. These suits were decided against the title of the defendants, .and in September, 1830, by leave of the court, they filed their amended answer, in which the administrators set forth the declaration of insolvency, with regard to the estate, by them made to the orphan’s court of Alabama, and insist that by the law of that State this suit should abate. Upon which the complainant filed an amended bill, stating the result of the suits above mentioned, and the recovery of the land in question, by a title paramount to that of defendants, and charging the administrators in general terms with a mal-administraiion and waste of the assets, which allegation is denied by the defendants in their answer. Much testimony was taken in the cause, an inquiry of damages was submitted pto a jury, and a verdict was found ascertaining them, upon which a decree was pronounced in favor of the complainant and against the administrators of Thomas H. AIIsup, from which an appeal has been prosecuted to this court.
The question chiefly debated before us is, whether a foreign administrator can be sued in that character in this State? This question we do not hesitate to answer in the negative. Justice Story, in Conflict of Laws, p. 422, § 513, says: “It has become a general doctrine of the common law, recognised both in England and America, that no suit can be brought by or against any foreign executor or administrator in the courts o'f this-country, in virtue of his foreign letters testamentary or of administration, but new letters of administration must be taken out and new security given, according to the general rules of law prescribed in the country where the suit is brought.” See the ample list of authorities referred to by Justice Story which fully sustain his position. It is true, indeed, that the State of Tennessee, by a provision in the act of *285 1809, cl2i, almost peculiar to this State, has permitted suits to be brought against her citizens by foreign executors or ministrators, by virtue of their foreign letters testamentary or of administration, without giving security or subjecting themselves to account in any way to our courts of probate, for the proceeds of the local assets. But this concession of rights on the part of Tennessee to her sister States, more generous perhaps than discreet, cannot have the effect to subject to the action of her courts the assets within a foreign jurisdiction. Indeed, the rights of her citizens are more restricted by the operation of the act of 1809, than are those of the citizens of other States.
If one administer here upon the estate of a decedant whose domicil was in Tennessee, and go' elsewhere to collect personal assets existing in specie, and to remove them, he is subject to be sued and to be rendered liable to the extent of their value as an executor of his own wrong, by the foreign creditor of the decedant. If he seek to recover assets lying in action, he must administer and account for the proceeds to the foreign jurisdiction and pay the claims of the foreign creditors, before he can bring the surplus to be administered here. But the foreign administrator or executor may come here, and by suits in court or otherwise, collect assets, and go hence without account, unless indeed they might while in (rcmsitu be detained in some mode at the instance of the domestic creditors. It therefore makes no difference in this case, we think, under the circumstances, that certain of the assets were received by the administrators within our own local jurisdiction, even if that matter had been stated in the bill and had not appeared in the proofs merely; for they were removed before the institution of this suit, and have been accounted for to the orphan’s court in Alabama.
It is true, indeed that about the year 1825, the supreme court of this State in the case of Richmond vs. Edwards, (not reported,) upon the general question which we have been discussing, came to a different conclusion from ourselves. That was an action of debt against the defendant's administrator, who pleaded that he was not administrator, to which the plaintiff replied, thatthe defendant had administer *286 ed in Alabama, and exhibited with bis replication, a copy of the letters of adminisiration in Alabama. To this replication a demurrer was filed, which in the supreme court was held to be bad.
But to this decision we cannot assent. The contrary doctrine is supported by a weight of authority altogether overwhelming, and it is based upon grounds of just reason and international convenience, to disregard which, would almost place a State without the pale of civilized communities. In a nation like ours, so highly commercial and of such intimate intercommunication, and consisting of so many distinct governments, regulated by diversified and sometimes conflicting systems of law, to subject an administrator to be sued in that character, in every foreign jurisdiction in which he might happen to be found by a creditor, would produce confusion and disaster almost beyond our power to imagine or describe.
We think, therefore} that the decree in this case is erroneous. But as the very debt of this complainant was exhibited to the orphan’s court of Alabama by the defendants in their declaration of insolvency — as two of the administrators are resident within our local jurisdiction, and as the heirs and distributees of the intestate, as well as the administrators, are parties to this suit, we are of opinion, that it the administrators have closed and made a final settlement of their administration in Alabama, a court of chancery has a right to interpose between the administrators and the distributees, on behalf of the complainant, and to decree that the former in their character as trustees, shall pay any such surplus to the complainant in satisfaction of his debt. See 7 Cow. Rep. 64: 6 Coke Rep. 47. This will not produce any interference or conflict with the local jurisdiction of Alabama. Whatever is res judicata there, will remain unaffected by the action of this court. As the records of settlements made by the administrators with the orphan’s court in Alabama, and by the defendants exhibited in this case, make it probable perhaps, that there is a surplus in the hands of the administrators belonging, not to the Alabama creditors, but to the distributees, the complainant, if he wishes it, may have an account for th.e purpose of ascertaining whether there be such surplus. If, upon ta- *287 Idng the account such surplus shoúld be found unadministered in the bands of the defendants, the same shall be applied, first to the payment of the costs of this suit, then to the satisfaction of complainant’s debt. But' if there be no such unad-ministered surplus, or not sufficient to pay the costs of this suit, then the heirs and distributees shall pay their own costs, and the defendants, the administrators, shall pay the balance .of the costs, until the filing of their amended answer in 1830, and the complainant the balance of the costs after the filing of such amended answer.
Judgment reversed.